# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VIRGINIA BECKER**, | : | CIVIL ACTION NO. 1:08-CV-2228 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **FARMINGTON CASUALTY COMPANY**, **LEON BECKER**, and **K.C. and C.C., as parents and natural guardians of C.B.**, | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Virginia Becker ("Becker" or "Virginia") brings this diversity action for declaratory judgment, and she seeks damages for breach of contract and bad faith from her insurance provider, defendant Farmington Casualty Company ("Farmington").[1] Becker accuses Farmington of breaching its duty to defend and indemnify her in an underlying lawsuit filed in 2008 in state court. Presently before the court is Farmington's motion (Doc. 30) to dismiss the complaint for failure to state a claim upon which relief may be granted. For the reasons that follow, the motion will be granted.

---

[1] Although Leon Becker, K.C., and C.C. are also named as defendants in the above-captioned case, plaintiff Virginia Becker does not state a claim against any of them. In a memorandum dated June 25, 2009, (Doc. 28), the court found that these individual defendants were fraudulently joined, that they are not necessary parties, and that their citizenship should be disregarded for purposes of determining whether it has diversity jurisdiction over the above-captioned case pursuant to 28 U.S.C. §§ 1332(a) and 1441.

## I. **Statement of Facts**[2]

This case arises from allegations of child molestation. Virginia acted as babysitter of her grandchild, C.B., at various times in 2006 and 2007. (Doc. 24, Ex. A, ¶¶ 6-7.) Leon Becker ("Leon"), Virginia's husband, sexually molested C.B. on multiple occasions while the child was at the Becker home. (Id. at ¶ 8.) On August 5, 2008, Leon was convicted of corruption of minors, indecent assault, and endangering the welfare under Pennsylvania criminal statutes. (Id. at ¶ 14.)

On August 20, 2008, C.B.'s parents, K.C. and C.C., brought a civil action for damages against Leon and Virginia in the Court of Common Pleas of Lebanon County, Pennsylvania. (Doc. 24, ¶ 5; Doc. 24, Ex. A.) The claim against Leon includes counts of assault, battery, false imprisonment, and intentional infliction of emotional distress stemming from the incidents of sexual contact with C.B. (Doc. 24, Ex. A, ¶¶ 32-40.) The claim against Virginia sounds entirely in negligence, with its basic allegation being that her negligent acts or omissions allowed the molestation to occur. (See Doc. 24, Ex. A, ¶¶ 16-31; Doc. 24, ¶ 13.)

Virginia contacted her insurer Farmington, the defendant in this action, shortly after the civil action was commenced. (Doc. 24, ¶ 15.) Farmington responded by letter dated October 9, 2008, informing the Beckers that, although the

---

[2] In accordance with the standard of review for a motion to dismiss pursuant to Rule 12(b)(6), the court will present the facts as alleged in the complaint. See infra Part II. However, those portions of the complaint which consist of no more than legal conclusions or a formulaic recitation of the elements of a cause of action have been disregarded. Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009).

homeowners policy held jointly by Virginia and Leon generally covered personal liabilities sounding in negligence, the specific claims alleged were excluded on multiple grounds.[3] (See Doc. 24, Ex. D.) First, Farmington contended that the heart of the suit is intentional harm committed by one of the insured. (Id.) Farmington interpreted the language of the policy to exclude coverage for all

---

[3] The policy provides in pertinent part:
SECTION II - LIABILITY COVERAGES
COVERAGE E - PERSONAL LIABILITY
If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
1. Pay up to our limit of liability for the damages for which an "insured" is legally liable; and
2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.
. . . .
SECTION II - EXCLUSIONS
1. Coverage E - Personal Liability and Coverage F - Medical Payments to Others do not apply to "bodily injury" or "property damage":
   a. Which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":
      (1) Is of a different kind, quality or degree than initially expected or intended; or
      (2) Is sustained by a different person, entity, real or personal property, than initially expected or intended.
      . . . .
   k. Arising out of sexual molestation, corporal punishment or physical or mental abuse.
   . . . .
SECTION II - CONDITIONS
2. Severability of Insurance. This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".
(Doc. 24, Ex. B.)

3

insureds if any insured intentionally caused the bodily injury. (Id.) Second, Farmington contended that claims linked to sexual molestation are specifically excluded from coverage. (Id.) In Farmington's estimation, the common fact of sexual molestation shared by all the claims in the suit precluded defense or indemnification. (Id.) Third, Farmington contended that the nature of C.B.'s alleged injury is emotional or psychological. (Id.) Because the coverage is limited to physical harm, Farmington did not recognize a duty to defend or indemnify.[4] (Id.)

Virginia filed a separate action in the Lebanon County Court of Common Pleas on October 16, 2008, seeking a declaratory judgment that Farmington is obliged at this stage to defend her for negligent torts and potentially indemnify her for damages. (See Doc. 1, Ex. 8, amended by Doc. 24.) Farmington removed the action to this court, based on diversity of citizenship. (See Doc. 1.) On July 15, 2009, Farmington filed a motion (Doc. 30) to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6). Briefs have been filed by all parties and the issue is now ripe for disposition.

## II. **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted.

---

[4] Other grounds for denial of coverage were put forward in Farmington's letter to the Beckers. Farmington does not raise these issues as part of its motion to dismiss and, therefore, the details are irrelevant for the present discussion.

FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a two-step inquiry. In the first step, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Ashcroft v. Iqbal, --- U.S. ---, 129 S.

5

Ct. 1937, 1950 (2009) (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, --- U.S. at ---, 129 S. Ct. at 1949. When the complaint fails to establish defendant liability, however, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III. **Discussion**[5]

At this stage, Becker and Farmington both ask the court to determine whether the homeowners insurance policy issued by Farmington to the Beckers contemplates personal liability coverage for the underlying claim against Virginia.[6]

---

[5] Jurisdiction over the instant action is based on diversity of citizenship, see 28 U.S.C. § 1332, which in this case requires the court to apply Pennsylvania law to the parties' substantive claims. See Norfolk S. Ry. Co. v. Basell USA, Inc., 512 F.3d 86, 91-92 (3d Cir. 2008). Neither party disputes the application of Pennsylvania state law to this matter and, indeed, the primary arguments on each side proceed from the assumption that Pennsylvania law governs. Accordingly, decisions of the Pennsylvania Supreme Court are binding precedent upon this court, and Pennsylvania Superior Court decisions will be treated as persuasive precedent. See State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 107 n.2 (3d Cir. 2009).

[6] The claim against Leon is only referenced here to the extent that it impacts Virginia's ability to obtain defense or indemnification from Farmington. There appears to be no question that the policy excludes coverage for Leon's conduct, due to the intentional nature of the underlying tort and the allegations of sexual molestation levied against him.

6

The court is charged with interpreting the insurance policy to determine the existence or absence of coverage. Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007). The court attempts to discern the intent of the parties from the clear and unambiguous language of the written instrument. Id. When a provision is susceptible to differing reasonable interpretations, such ambiguities are resolved in favor of the insured. Id.

An insurer's duty to defend or indemnify an insured in a suit brought by a third party depends upon a determination of whether the third party's complaint triggers coverage. Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006); Mut. Benefit Ins. Co. v. Haver, 726 A.d 743, 745 (Pa. 1999); Gen. Accident Ins. Co. v. Allen, 692 A.2d 1089, 1095 (Pa. 1997). Across jurisdictions, that duty is determined *solely* by the language and allegations of the complaint. Kvaerner, 908 A.2d at 896 (citing Wilson v. Md. Cas. Co., 105 A.2d 304, 307 (1954)). Because the insurer's duty to defend is broader than its duty to indemnify the insured, a finding that there is no duty to defend a suit will also preclude a duty to indemnify. Id. at n.7; see also Allen, 692 A.2d at 1095; Scopel v. Donegal Mut. Ins. Co., 698 A.2d 602, 605 (Pa. Super. 1997).

Farmington's motion for dismissal essentially reiterates the three bases for denying coverage set forth in its initial letter to the Beckers dated October 9, 2008 (Doc. 1, Ex. D): First, Farmington states that the underlying tort action has as its central fact the molestation of C.B. by Leon Becker. (See Doc. 31 at 10.) As a matter of law, sexual molestation is an intentional act. (Id. at 7-8.) Hence,

7

Farmington asserts that the intentional act exclusion bars coverage for all insureds who might be held liable for injuries arising from this criminal conduct. (Id. at 8-9.) Second, according to Farmington, the specific exclusion for injuries arising from sexual molestation also bars coverage for all insureds who might be liable for those injuries. (Id. at 12.) Third, Farmington argues that the injuries as alleged in the underlying complaint are emotional, mental, or psychological in nature and therefore fall outside the definition of "bodily injury" developed by Pennsylvania courts. (Id. at 13.) The complaint fails to *describe* any physical injuries, and the court should find conclusory allegations to be insufficient to state a claim. (Id. at 14.)

  The court need only find in Farmington's favor on one of the issues in order to dismiss the action. The court will focus on the exclusion of coverage for

intentional injuries caused by an insured, because the resolution of this issue is dispositive.[7]

Although construing an insurance policy is a matter of law entrusted to the court, the court is at all times guided by precedent. The policy language on intentional torts and severability of coverage presented herein has been interpreted by Pennsylvania courts to exclude coverage. Finding that no distinguishing factors exist to justify departing from this interpretation, the court's role is to apply Pennsylvania law.

---

[7] The court notes that Farmington's alternative arguments for denial of coverage are far less persuasive. In the underlying action, the claim against Virginia arises out of negligent acts or omissions rather than sexual molestation. Cf. Bd. of Pub. Ed., 709 A.2d at 916-17 (interpreting a clause which excluded coverage for "claims arising out of . . . assault or battery"). Farmington's contention that the language here—"bodily *injury* . . . arising out of sexual molestation," (Doc. 24, Ex. B) (emphasis added)—mandates a different result is not consistent with Baumhammers. 938 A.2d at 291-3. There, the Pennsylvania Supreme Court explained that the cause of "injuries" must be analyzed from the perspective of each co-insured defendant. Id. That the efficient cause of the alleged injuries is excluded conduct by one insured does not preclude defense and indemnification for a co-insured whose negligence is alleged to have enabled the misbehavior. Id.

The allegations of sexual molestation and contact with a child's genitals in the underlying complaint do not strike the court as inconsistent with characterizations of "physical harm" or "bodily injuries." Farmington only cites cases involving adults for the proposition that sexual contact, without more, is not "bodily injury." Moreover, the allegations of "permanent" psychological injuries expected to affect the child's life into adulthood raise the possibility of a diagnosed or diagnosable psychiatric disorder. In Glikman v. Progressive Cas. Ins. Co., 917 A.2d 872 (Pa. Super. 2007), the Superior Court of Pennsylvania accepted the proposition that a psychiatric disorder can be a "disease" within the definition of "bodily injury." 917 A.2d at 873 (finding that a litigant who suffers from post-traumatic stress disorder has a "disease" and has thereby "sustained a bodily injury within the meaning of the policy"). The policy at issue in the instant case also defines "bodily injury" to include "disease," (Doc. 24, Ex. B), and therefore, the injuries allegedly sustained by C.B. may fall within the ambit of this definition.

9

In McAllister v. Millville Mut. Ins. Co., 640 A.2d 1283, 1285 (Pa. Super. 1994), the court was presented with an insurance policy which excluded coverage for a loss caused by either neglect by "any insured" or intentional acts by "an insured." The policy, issued by the insurer to three brothers as co-insureds, further provided that "each person . . . is a separate insured under this policy." Id. at 1288. One of the brothers set fire to their home. Id. at 1284. That the brother who started the fire was barred from recovery for the intentional loss was never seriously disputed. Id. at 1285-86. However, the innocent co-insureds submitted a claim to recover for their lost interest in the home which burned down. Id. at 1286. The Superior Court held that the innocent co-insureds were also barred from recovery. Id. at 1289. According to the court, the phrases "any insured" or "an insured" plainly and unambiguously barred coverage for all insured based on the actions of one insured. Id. The court found the import of these phrases to be clear "notwithstanding the provision which define[d] each named insured as a 'separate insured.'" Id.; see also Donegal Mut. Ins. Co. v. Baumhammers, 893 A.2d 797, 818-20 (Pa. Super. 2006) (en banc) (relying on McAllister to parse the use of "an insured" and "any insured"), aff'd in part and rev'd in part on other grounds, 938 A.2d 286 (Pa. 2007).

The Farmington policy at issue here presents similar language: an exclusion of personal liability coverage for intentional acts by "an insured" coupled with a severability clause. See supra note 3. Becker contends that the policy in this case is distinguishable insofar as the insurer in McAllister equated the phrases "an insured" and "any insured" by using them in tandem, whereas the Farmington

10

policy does not reference the term "any insured." (See Doc. 32 at 9-11.) Without such a handy gloss, Becker argues, the phrase "an insured" is ambiguous and therefore must be construed against the insurer. (Id. at 11-13.) In addition, Becker points to the exclusion for property loss,[8] (see id. at 13-14), arguing that stylistic differences in its exclusionary language illustrate the ambiguity of "an insured." Becker suggests that when Farmington wishes to express that conduct by one insured affects coverage for all insureds—as it does in the exclusion for intentional property loss—it writes expansive policy language to dispel any doubt as to the group consequences. (Id.) By contrast, the exclusion for personal liability is tersely worded. (Id.) Becker contends that Farmington's failure to juxtapose "an insured" and "any insured," and Farmington's uneven style, distinguishes this case from McAllister. (Id. at 17.)

Neither of Becker's arguments is persuasive. The majority in McAllister had no doubt as to the meaning of "an insured." The opinion cites a string of cases from

---

[8] The relevant provisions provide as follows:
SECTION I - EXCLUSIONS
A.   We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
    . . . .
    8.   Intentional Loss. Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss. In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.
(Doc. 24, Ex. B.)

11

the highest courts of other jurisdictions holding that the phrase "an insured" in an exclusion clause barred recovery for innocent co-insureds. 640 A.2d at 1288. Far from acknowledging any latent ambiguity in the phrase, the majority in McAllister found that the co-insureds "torture[d] the plain and unambiguous language and meaning of the policy." Id. at 1289. Moreover, the majority in McAllister held that the meaning of "an insured" remained clear in spite of a severability clause.[9] Id. The court concludes that the reasoning of McAllister controls the outcome of the instant case.

If one proceeds from the starting point that "an insured" is clear and unambiguous, then Becker's arguments are simply an exercise in manufacturing ambiguity. See, e.g., Brosovic v. Nationwide Mut. Ins. Co., 841 A.2d 1071, 1073 (Pa. Super) ("courts should try to read policy provisions to avoid ambiguities, if possible, and not to torture language to create them") (internal quotation marks omitted). Although Becker's linguistic analysis may be a reasonable approach to interpreting

---

[9] In her brief opposing the motion to dismiss, Becker points to the severability clause as a source of confirmation for her position. (See Doc. 32 at 14-15.) She fails to acknowledge that the McAllister court squarely considered identical language and held it to be unavailing.

truly ambiguous exclusionary language, McAllister leaves the court with no doubt that the exclusion here is free of ambiguity.[10]

Based on the court's interpretation of the insurance policy presented herein and the allegations in the underlying state tort action, the complaint does not trigger coverage and, therefore, Farmington has no duty to defend Becker in the underlying suit. See Kvaerner, 908 A.2d at 896. This determination also precludes indemnification in the event Becker is found liable. See id. at n.7. Consequently,

---

[10] The court acknowledges the dissent in McAllister, which observed:
> The cases cited by the majority do tend to distinguish between joint and severable interests in an insurance policy based upon the use in the relevant exclusionary clauses of "an" and "any" (suggesting joint interests) or "the" (suggesting severable interests). However, the application of this rule of construction was necessary because none of the cited cases involved policies with a clear pronouncement that the co-insureds' interests were in fact separate.
>
> In this case, the language in the definitional section of the policy expressly establishes that the interests of the co-insureds are severable. I believe that this definition is the operative phrase, and it certainly is more meaningful than the articles "an", "any" or "the".

McAllister, 640 A.2d at 1289 (Beck, J., dissenting). However, this dissenting view is a minority position rejected in most courts as unreasonable. Pennsylvania law on this issue is clear, as explained in General Accident Insurance Co. of America v. Allen, 708 A.2d 828 (Pa. Super. 1998), which Becker misapprehends as favorable authority:

> Examples of exclusionary language producing [a result against the innocent co-insured] include bodily injury which was expected or intended by "any insured" and "anyone we protect." Less clear is the usage of "an insured," although *generally this phrase has been construed to equate to "any insured."* On the other hand, the cases here, and elsewhere, dealing with the usage of the term "the insured" have held that for coverage to be excluded under the "intentional act" or "intended or expected" exclusion the damage or injury had to be intended by the insured in question, not another insured under the policy.

708 A.2d at 832 (emphasis added).

13

Becker's claims of breach of contract and bad faith, premised upon an unreasonable denial of coverage by Farmington, are without merit.

## IV. Conclusion

For the foregoing reasons, Becker has failed to state a claim upon which relief can be granted. Farmington's motion to dismiss will be granted. An appropriate order follows.

  S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated: July 22, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VIRGINIA BECKER**, | : CIVIL ACTION NO. 1:08-CV-2228 |
| **Plaintiff** | : (Judge Conner) |
| v. | : |
| **FARMINGTON CASUALTY COMPANY**, **LEON BECKER**, and **K.C. and C.C., as parents and natural guardians of C.B.**, | : |
| **Defendants** | : |

## **ORDER**

AND NOW, this 22nd day of July, 2010, upon consideration of the motion (Doc. 30) to dismiss, filed by defendant Farmington Casualty Company, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion (Doc. 30) to dismiss is GRANTED. All claims are DISMISSED.

2. The Clerk of Court is directed to CLOSE this case.

                                          S/ Christopher C. Conner
                                          CHRISTOPHER C. CONNER
                                          United States District Judge